## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

3M Innovative Properties Company and
Dyneon LLC,

       Plaintiffs/Counterclaim Defendants,


v.                               **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 03-3364 (MJD/AJB)

Dupont Dow Elastomers LLC,

       Defendant/Counterclaim Plaintiff.

_____

John C. Adkisson and Juanita R. Brooks, Fish & Richardson, and R.J. Zayed, Carlson, Caspers, Vandenburgh & Lindquist, Counsel for Plaintiffs.

Richard M. Dahl, Madigan, Dahl, & Harlan, P.A., and Thomas B. Kenworthy, Morgan, Lewis & Bockius, Counsel for Defendant.

_____

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Stay Litigation Pending Completion of the Reexamination of the '919 Patent.  [Docket No. 258]  The Court heard oral argument on August 25, 2005.  For the reasons that follow, the Court grants Plaintiffs' Motion to Stay.

## II.    FACTUAL BACKGROUND

The '919 patent, relating to a polymer processing additive, was issued to Plaintiff Dyneon LLC on August 21, 2001.  Plaintiff 3M Innovative Properties Company is the exclusive licensee of the '919 patent.  Dyneon and 3M (collectively "Dyneon") filed this

action on June 6, 2003, alleging infringement of the '919 patent.  Defendant DuPont

Performance Elastomers ("DuPont"), formerly known as DuPont Dow Elastomers,

denied the infringement allegations and asserted defenses and counterclaims.

Discovery has been completed in this case.  The Court has decided two summary

judgment motions and has construed relevant claim terms.  [Docket Nos. 159, 228].

In November 2004, after the Court issued its first summary judgment order,

DuPont filed a request for reexamination of the '919 patent.  On January 13, 2005, the

United States Patent and Trademark Office ("PTO") granted DuPont's request.   [Docket

No. 214]  On January 31, 2005, the Court ordered the parties to address "the question

of whether the Court should stay this case while the reexamination proceedings are

pending."  [Docket No. 220]  Both parties opposed granting a stay.  [Docket Nos. 221,

223]

On July 28, 2005, the Court set this case for trial beginning on January 4, 2006.

[Docket No. 242]  On August 5, Dyneon filed the current Motion to Stay Litigation

Pending Completion of the Reexamination of the '919 Patent.  [Docket No. 258]

## III.    DISCUSSION

### A.    Standard

"Courts have inherent power to manage their dockets and stay proceedings,

including the authority to order a stay pending conclusion of a PTO reexamination."

Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted).

The decision of whether to grant a stay pending reexamination of a patent is within the

district court's discretion.  <u>Viskase Corp. v. Am. Nat'l Can Co.</u>, 261 F.3d 1316, 1328

(Fed. Cir.  2001).  When considering a motion to stay pending reexamination, courts

consider the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical
> disadvantage to the non-moving party; (2) whether a stay will simplify
> the issues in question and trial of the case; and (3) whether discovery is
> complete and whether a trial date has been set.

<u>Xerox Corp. v. 3Com Corp.</u>, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

### B.      Whether a Stay Would Create Prejudice

DuPont claims that it will be prejudiced by a delay because Dyneon continues to

post a message on its website stating that DuPont's products have been accused of

infringement.  DuPont asserts that it loses business each month that the litigation

continues because customers avoid purchasing products accused of infringement.

DuPont has offered no evidence that Dyneon has informed customers of anything

beyond the existence of the lawsuit and the short statement on its website.  In any

event, should DuPont ultimately prevail on its pertinent claims, its damages will be

compensable at trial after reexamination.

DuPont also claims that it will have to redo much of its trial preparation work

from the last six months if the case does go to trial after a stay.  It asserts that evidence

related to its stayed antitrust claims will be lost if this stay lasts for several years.

Although some trial preparation may have to be repeated, DuPont offers no evidence to

support its claim that hundreds of thousands of dollars of trial preparation work will be

lost if this case goes to trial after reexamination is complete.

In this case, unlike in the cases cited by DuPont, the party opposing the stay is the very party that requested reexamination by the PTO at a late stage in the litigation. DuPont itself contributed to the delay in this case.  Any prejudice to DuPont is partly of its own making.  The Court concludes that this factor weighs in favor of granting the stay.

**C.      Whether a Stay Will Simplify the Litigation**

Staying this litigation during the pendency of the PTO reexamination proceedings will provide the Court and parties with multiple advantages.  For example:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

Middleton, Inc. v. Minn. Mining & Mfg. Co., No. 4:03-CV-40493, 2004 WL 1968669, at

*3 (S.D. Iowa Aug. 24, 2004) (unpublished) (citation omitted).  Granting a stay will

promote judicial economy by "maximiz[ing] the likelihood that neither the Court nor

the parties expend their assets addressing invalid claims."  Softview Computer Prods.

Corp. v. Haworth, Inc., 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000).

Additionally, the results of the reexamination will narrow and clarify trial issues.

Evidence of the result of the completed reexamination proceedings could be highly

relevant to DuPont's inequitable conduct allegations at trial.  See, e.g.,  Molins PLC v.

Textron, Inc., 48 F.3d 1172, 1179 (Fed. Cir. 1995) (noting that the *result* of a PTO

reexamination would be of "strong probative value in determining whether the

undisclosed information was material").  On the other hand, admission of evidence of

an incomplete reexamination would have low probative value, would distract from the

core issues of the case, and would be highly prejudicial.  See, e.g., Acoustical Design,

Inc. v. Control Elecs. Co., Inc., 932 F.2d 939, 942 (Fed. Cir. 1991) (noting that "initial

rejection by the Patent and Trademark Office of original claims that later were

confirmed on reexamination hardly justifies a good faith belief in the invalidity of the

claims"); Amphenol T&M Antennas Inc. v. Centurion Int'l Inc., 69 U.S.P.Q.2d 1798,

1800 (N.D. Ill. 2002) (noting that "telling the jury that the patent has been called into

question by the Patent Office may significantly influence the jury's application of the

presumption of validity").  The Court concludes that this factor weighs heavily in favor

of granting a stay.

**D.     Whether Discovery Is Complete and a Trial Date Has Been Set**

This case is trial ready.  Discovery is complete, and the Court has decided all

summary judgment motions.  The Court has construed the relevant claim terms and has

set the trial date for January 2006.  In February 2005, Dyneon represented to the Court

that it opposed a stay pending reexamination and that the case was ready for trial.  This

factor weighs against granting a stay.  However, any wasted trial preparation expenses

incurred by staying this matter will be insignificant compared to the amount of money

saved by ensuring that there will be, at most, only one trial in this case.  See

Middleton, Inc. v. Minn. Mining & Mfg. Co., No. 4:03-CV-40493, 2004 WL 1968669, at

*5-*6 (S.D. Iowa Aug. 24, 2004) (unpublished) (granting stay two months before trial

date, although case was over eight years old, because parties would not recoup their

pretrial expenditures if court denied stay but would have to spend considerable

resources on jury trial that might have to be repeated).

### E.      Conclusion

The Court concludes that a stay is warranted.  Granting a stay will prevent the

possibility of duplication, promote efficiency, and conserve judicial resources, while

providing the Court with the benefit of the PTO's technical expertise.  Although Dyneon

is requesting a stay late in the proceedings, DuPont also bears responsibility for its

decision to seek reexamination only after the Court ruled on the first summary

judgment motion.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Plaintiffs' Motion to Stay Litigation Pending Completion of the
        Reexamination of the '919 Patent [Docket No. 258] is **GRANTED**.

2.      This action is hereby **STAYED** pending reexamination of United States
        Patent No. 6,277,919 in the United States Patent and Trademark Office.

3.      Counsel for the parties are directed to notify the Court of the status of the
        reexamination proceedings at six month intervals while this Stay Order is
        in effect.


Dated:   September 8, 2005                          s/ Michael J. Davis
                                                    Judge Michael J. Davis
                                                    United States District Court